UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
UNITED STATES OF AMERICA, : 12-CR-758 (ARR)
:
-against- : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
EUGENE GOUREVITCH, :
: OPINION & ORDER
Defendant. :
:
------------------------------------------------------------------- X

ROSS, United States District Judge:

On February 18, 2014, defendant Eugene Gourevitch pleaded guilty to Count Three of the superseding information, charging wire fraud in violation of 18 U.S.C. § 1343. Dkt. #19. On June 16, 2014, this court sentenced Gourevitch to a 63-month term of imprisonment followed by three years of supervised release. Dkt. #29. The Judgment stated that the court would "defer assessment of restitution for a period of 90 days to permit a determination, which it is not now possible to make, as to the identity of the victim." Id. at 6. The 90-day period has now elapsed. For the reasons set forth below, the court finds that it is still not possible to make a determination as to the identity of the victim, and therefore the court will not enter a restitution order.

## DISCUSSION

Under the Mandatory Victim Restitution Act of 1996 ("MVRA"), courts shall award restitution in any sentencing proceeding for an offense against property under Title 18 in which "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii). "[T]he purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." United

1

States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006).

By its plain language, the MVRA requires restitution only where the offense had an "identifiable victim or victims." 18 U.S.C. § 3663A(c)(1)(B). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). "The MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified. Identification of victims is a statutory prerequisite to the application of the MVRA." United States v. Catoggio, 326 F.3d 323, 328 (2d Cir. 2003) (internal citation omitted). Moreover, "a restitution order must be tied to the victim's actual, provable, loss." United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012).

The MVRA "places responsibility for identifying the victims of the defendant's offense on the government." United States v. Reifler, 446 F.3d 65, 121 (2d Cir. 2006). The government, "after consulting, to the extent practicable, with all identified victims," must provide the probation officer with "a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1). The probation officer must include information in the pre-sentence report that is "sufficient for the court to exercise its discretion in fashioning a restitution order," including information on the losses sustained by victims and the defendant's financial circumstances. 18 U.S.C. § 3664(a); see Fed. R. Crim. P. 32(c)(1)(B) ("If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."). When preparing the pre-sentence report, "[i]f the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." 18 U.S.C. § 3664(a). If the victims' losses cannot be determined by a date ten days before sentencing, the government or

probation officer must inform the court, and "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).[1]

In resolving any dispute regarding the "proper amount or type of restitution," the court must apply a preponderance of the evidence standard. 18 U.S.C. § 3664(e). The government has the burden of proving "the amount of the loss sustained by a victim as a result of the offense," while the defendant has the burden of demonstrating his financial resources. Id. "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." Id. The court "may require additional documentation or hear testimony" relating to restitution, including in camera review of evidence, 18 U.S.C. § 3664(d)(4), and "may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master," 18 U.S.C. § 3664(d)(6). This discretionary language grants the district court authority to determine which additional procedures are warranted. See United States v. Sabhani, 599 F.3d 215, 258 (2d Cir. 2010) ("We have noted, in the context of contested issues regarding the propriety of a restitution award, that the sentencing procedures employed to resolve such disputes are within the district court's discretion so long as the defendant is given an adequate opportunity to present his position."); accord United States v. Maurer, 226 F.3d 150, 151-52 (2d Cir. 2000) (per curiam).

In this case, because Gourevitch pleaded guilty to wire fraud, it is undisputed that he committed an offense against property under Title 18 that triggers the restitution provisions of the MVRA. However, the court finds that the record does not establish by a preponderance of the evidence that an "identifiable victim" incurred a pecuniary loss. 18 U.S.C. § 3663A(c)(1)(B).

The government's sentencing memorandum describes the conduct underlying

---

[1] Following that 90-day period, if a victim discovers further losses, the victim can petition the court to amend the restitution order within 60 days of discovery of the losses. The court may amend the order "only upon a showing of good cause for failure to include such losses in the initial claim for restitutionary relief." 18 U.S.C. § 3664(d)(5).

3

Gourevitch's wire fraud offense:

> In July 2012, Gourevitch admitted that he had engaged in the
> instant wire fraud scheme. Specifically, Gourevitch told the
> government that earlier in the spring of 2012, he told the individual
> identified as "John Doe #1" in the Information that he could invest
> John Doe's money in the initial public offering (IPO) of Facebook
> stock at approximately $40 per share. Gourevitch paid a friend
> $100,000 to set up a company called Konnektix Ventures.
> Konnektix Ventures, in turn, opened a bank account at Signature
> Bank and a trading account with Interactive Brokers. To further
> conceal his own involvement, Gourevitch directed his friend to
> have signatory authority on the Konnektix accounts at both
> Interactive Brokers and Signature Bank.
>
> Gourevitch then told John Doe #1 to send the funds for the
> Facebook stock investment to the Konnektix Ventures account at
> Signature Bank. In order to conceal John Doe #1's anticipated
> ownership of the stock, John Doe #1 first transferred the $6 million
> he intended to invest in the Facebook IPO to an intermediate
> company, Sorgente Ltd., controlled by Gourevitch, who then
> caused the money to be transferred to the Konnektix Ventures
> account at Signature Bank. Finally, Gourevitch directed his friend
> to transfer $5 million to the Interactive Brokers account, leaving $1
> million in place at Signature Bank. Bank records corroborate
> Gourevitch's admissions. Gourevitch did not inform John Doe #1
> of these transfers.

Gov't Sentencing Mem., Dkt. #24 at 2.[2] Based on these facts, the pre-sentence report filed by the Probation Department on April 29, 2014, initially recommended that restitution be made to John Doe #1 under the MVRA. Dkt. #22, ¶ 90.

However, in a subsequent submission filed with the court under seal on June 9, 2014, the government raised factual questions regarding the identity of the victim of Gourevitch's wire fraud offense. Dkt. #26 at 4. According to the government, the funds that John Doe #1

---

[2] The government has withheld John Doe #1's name in all publicly filed documents. The government has filed additional documents under seal, and the court has found sealing to be warranted under the circumstances of this case. In deciding whether a restitution order is appropriate, the court has considered both the government's publicly filed submissions and the additional information filed under seal. The MVRA specifies that, in connection with a restitution proceeding, "[t]he privacy of any records filed, or testimony heard, . . . shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera." 18 U.S.C. § 3664(d)(4). In this opinion, the court will refer only in general terms to information contained in the sealed filings.

transferred to Gourevitch came from a corporate account, and the ownership of that corporation could not be determined. Id. In an addendum to the pre-sentence report filed under seal on June 13, 2014, the Probation Department recommended, based on the government's letter, that the court defer a final determination of restitution for a period not later than 90 days after sentencing, in accordance with 18 U.S.C. § 3664(d)(5). Dkt. #27. The addendum stated that if a victim could be identified during that period, the Probation Department would issue another addendum recommending an award of restitution for that victim. Id. However, if no victim could be identified, the Probation Department would issue an addendum recommending that no restitution order be entered. Id. In accordance with the Probation Department's recommendation, at Gourevitch's sentencing on June 16, 2014, the court deferred the assessment of restitution for a 90-day period to allow more time to determine the identity of the victim. Dkt. #29 at 6.

The 90-day period has now elapsed, and, in a letter filed under seal on September 15, 2014, the government takes the position that the identity of the victim of the wire fraud scheme cannot be determined. Dkt. #32. Based on the government's letter, the Probation Department issued another addendum to the pre-sentence report on September 22, 2014, recommending that no restitution order be issued. Dkt. #34. Having reviewed the detailed information set forth in the sealed submissions, the court finds that the government has provided ample basis to conclude that the ownership of the corporate account from which John Doe #1 transferred $6 million to Gourevitch is undetermined.

Nothing in the record contradicts the government's position. Counsel for John Doe #1 wrote a letter to the court on September 16, 2014, asserting that a restitution award of $6 million should be entered in favor of John Doe #1.[3] According to John Doe #1's counsel, the

---

[3] The court notes that the government and defendant are the only parties to this sentencing proceeding. A putative victim such as John Doe #1 is not a party to a sentencing proceeding even where restitution may be a component of

uncontested evidence shows that John Doe #1 "transferred $6 million into an account that Mr. Gourevitch controlled, and Mr. Gourevitch then stole that money from" John Doe #1. However, these facts alone, even if true, would not establish that John Doe #1 is necessarily a victim of the wire fraud scheme. To be a victim, John Doe #1 must have suffered a "pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). According to John Doe #1's own victim statement, provided to the Probation Department and cited in the pre-sentence report, John Doe #1 "caused a company that [he] had purchased" to transfer $6 million to an account controlled by Gourevitch. Dkt. #22, ¶ 16. As this statement demonstrates, John Doe #1 has always taken the position that the funds he purportedly transferred came from a corporate account that he controlled, not from his personal funds. For the reasons set forth in the government's submissions, the ownership of the corporate account is unclear. If John Doe #1 did not in fact own the corporation, he could not have suffered a pecuniary loss from transferring its funds. Even if John Doe #1 did own the corporation, the record does not make clear why the loss of the corporation's funds would represent a pecuniary loss to him in his personal capacity. Therefore, the submission from John Doe #1's counsel is insufficient to resolve the doubts regarding the ownership of the funds at issue.[4]

---

the sentence. See United States v. Grundhoefer, 916 F.2d 788, 793 (2d Cir. 1990) (holding that victims lack standing to contest restitution orders under the Victim Witness Protection Act, 18 U.S.C. § 3663, because the court found "no congressional aim in the Act either explicitly or implicitly to provide victims with an enforceable right to obtain restitution"); accord United States v. Aguirre-Gonzalez, 597 F.3d 46, 53 (1st Cir. 2010) ("Notwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal sentencing proceeding."). John Doe #1 could seek to assert rights under the Crime Victims Rights Act ("CVRA"), 18 U.S.C. § 3771. Indeed, the government provided John Doe #1 with notice of the sentencing as required by the CVRA. Dkt. #26 at 4. The CVRA provides that crime victims have "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). By its terms, the statute only grants a right to restitution "as provided in law," so if the requirements of the MVRA are not satisfied, John Doe #1 has no right to restitution under the CVRA. See In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 563 (2d Cir. 2005). The court has considered John Doe #1's submissions, but, for the reasons set forth in this opinion, finds that the requirements of the MVRA are not satisfied and that the law does not establish a right to restitution for John Doe #1 under the circumstances of this case.

[4] John Doe #1's counsel points to several instances where "parties involved in the investigation and prosecution" of Gourevitch have purportedly identified John Doe #1 as the victim of the wire fraud. For example, Count Three of the superseding information, to which Gourevitch pleaded guilty, states that Gourevitch "solicited and obtained funds from John Doe #1" and kept those funds for his own personal use as part of a wire fraud scheme. Dkt. #17 at 3. At sentencing, counsel for Gourevitch stated that Gourevitch "pled guilty to stealing the money from" John Doe #1, and the government, while not using John Doe #1's name, referred to him as the target of Gourevitch's fraud.

The MVRA places the burden on the government to identify the victims and prove the losses that they have sustained. Here, the government has represented to the court that it cannot meet that burden, its submissions convince the court that its position is justified, and the submissions from John Doe #1's counsel do not alter that analysis. The record does not establish the victim of Gourevitch's wire fraud offense by a preponderance of the evidence, and the court cannot issue a restitution order under the MVRA until a victim is identified. See Catoggio, 326 F.3d at 329 (holding that MVRA requires district court to "identify the victims and their actual losses" before imposing restitution, "even where a defendant's complex fraud scheme results in many victims whose identities and losses are difficult to ascertain").

The MVRA grants the court discretion to decline to order restitution where "the court determines that imposing and administering restitution would be unduly burdensome." Id. at 328. Under the statute, restitution is not mandatory if "the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). In enacting this exception, "Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof." Reifler, 446 F.3d at 136; accord United States v. Ferguson, 584 F. Supp. 2d 447, 457 (D. Conn. 2008). "[I]t lies within the sound discretion of the district court to decide whether the factual issues underlying a restitution order are so complex as to unduly burden the sentencing process." United States v. Cassidy, --F. App'x--, No. 13-2185, 2014 WL 2722570 (2d Cir. June 17, 2014); accord United States v. Gushlak, 728 F.3d 184, 193

---

John Doe #1's counsel also states that both the Victim Witness Coordinator for the U.S. Attorney's Office and the Probation Department identified John Doe #1 as a possible victim of the offense. However, all of these representations could arise from the undisputed evidence that Gourevitch solicited the funds from John Doe #1 and that John Doe #1 transferred the funds to Gourevitch. In more recent submissions, the government takes the well-supported position that John Doe #1 obtained those funds from a corporate account whose ownership is unclear.

(2d Cir. 2013) (MVRA "commits the balancing [of the victims' interest in restitution against the burden on the sentencing process] to the district court's discretion"); Zangari, 677 F.3d at 93 (if court finds that statutory exception applies, "then the court may, in the exercise of its sound discretion, decide not to order restitution at all").

In this case, the court finds that the case presents complex factual issues, and resolving those issues would impose a burden on the sentencing process that outweighs the need to provide restitution. For the reasons discussed above, the ownership of the account from which John Doe #1 transferred the funds to Gourevitch has not been established by a preponderance of the evidence. While it is apparently undisputed that Gourevitch acquired $6 million under false pretenses and kept it for himself, it is impossible to determine the identity the victim of this wire fraud scheme, because it is entirely unclear to whom that $6 million originally belonged.

This case presents highly unusual circumstances that make a determination of this contested factual issue particularly difficult.[5] The court has already granted the government an additional 90 days to ascertain the identity of the victim in this case. At the end of that period, the government's submission demonstrates that, if anything, the ownership of the account from which the funds were transferred is less clear than before. While John Doe #1's counsel has stated his position to the court and to the government, he has not provided evidence to corroborate his assertions regarding the ownership of the funds and has not indicated that he would be willing to do so. Based on the information provided to the court, it appears that additional proceedings would be unlikely to shed further light on the factual issues underlying

---

[5] For example, there are multiple other pending proceedings that relate to the ownership of the funds at issue here. The funds are subject to a preliminary order of forfeiture issued by this court on February 18, 2014. Dkt. #20. On September 16, 2014, the Kyrgyz Republic filed a petition under 21 U.S.C. § 853(n) claiming an interest in the funds. Dkt. #33. John Doe #1 has also filed a remission petition with the Attorney General asserting that he is the victim of the wire fraud offense and seeking the return of the funds that are subject to forfeiture. John Doe #1's counsel asserts in his letter to the court that John Doe #1 swore under penalty of perjury in his remission petition that he was the victim of the offense. However, since the court has no information about the remission proceedings before the Attorney General, the court does not give that assertion any weight in this separate sentencing proceeding.

this complex case. The sentencing process has already been extended long enough, and extending it further with little indication of eventual success would place too high a burden on the court and the parties.

At the same time, the need to provide restitution to any victim is not particularly high in this case, because the identity of the victim is the very question that remains unresolved. This is not a case where the court is presented with an identifiable victim but the losses are difficult to calculate. In such a case, mindful of the compensatory purpose of restitution, a court might be inclined to undertake a time-intensive inquiry in order to provide redress to individuals who were undisputedly harmed by the defendant's actions. See Gushlak, 728 F.3d at 193 ("[S]ection 3663A(c)(3)(B) plainly does not require the district court to surrender whenever one or more complex issues of causation or loss calculation appear."). Here, by contrast, the government has not been able to establish that anyone is even entitled to restitution. The additional burden on the sentencing process that would be caused by attempting to resolve this complicated factual issue outweighs the speculative benefit to any individual or entity whose entitlement to restitution might conceivably be established.

Therefore, while restitution would ordinarily be mandatory in this case, the court concludes that this case falls within the exception to the MVRA in which a court can decline to award restitution where the factual determinations necessary to impose a restitution order would be unduly burdensome. See In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 563 (2d Cir. 2005) (upholding district court's denial of restitution where the court found that "the victims in this case were numerous and that the complexity of resolving a multitude of factual and causal issues would extend the sentencing process inordinately"); United States v. Adorno, 950 F. Supp. 2d 426, 431 (E.D.N.Y. 2013) (finding case falls within exception to mandatory restitution because

of complex factual issues "both as to the cause and the amount" of the victim's losses); United States v. Zhu, No. 09-CR-465-01, 2010 WL 3282636, at *1 (E.D.N.Y. Aug. 18, 2010) (declining to enter restitution order where "the government neither asked for nor proved any amount that might be due as restitution"); Ferguson, 584 F. Supp. 2d at 458 (finding case "sufficiently complicated so as to make the MVRA inapplicable" where identifying all victims of securities fraud would "severely complicate and prolong the sentencing process," fashioning restitution order would involve high level of "detail and precision," and government admitted it did not know the identity or location of all victims); United States v. McQuillan, No. 07 Cr. 17(LMM), 2007 WL 2827850, at *2 (S.D.N.Y. Sept. 26, 2007) (declining to award restitution in securities fraud conspiracy case where purported victim's application for restitution "present[ed] complex issues of fact" and where the government and defendant both agreed that the amount of loss could not be reasonably determined).

## CONCLUSION

For the reasons set forth above, the court declines to enter a restitution order in this case. The MVRA requires restitution only where the offense has an "identifiable" victim or victims, and the government bears the burden of proving the identity of the victims and the amount of their losses. After the court granted an additional 90 days to investigate the facts relevant to restitution, as allowed by the MVRA, the government still takes the position that the identity of the victim cannot be determined, and the Probation Department has recommended that no restitution order be issued. Based on facts on the record, the court concludes that extending the proceedings further in order to resolve this complex issue of fact would "complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). Accordingly, no restitution order will be entered, and the sentencing proceedings in this case are closed.

SO ORDERED.

   /s/_____
Allyne R. Ross
United States District Judge

Dated:        September 23, 2014
                  Brooklyn, New York

**SERVICE LIST**

Government
Evan M. Norris
Brian D. Morris
United States Attorney's Office
Eastern District Of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

Defendant's Counsel
Marc A. Agnifilo
Brafman & Associates
767 Third Avenue
New York, NY 10017

Probation Officer
Sindee Hasnoot
U.S. Probation Department
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201-4201

Counsel for John Doe #1